## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff-Respondent.**

**v.**                                             **CIV-05-1294 JC/LAM**
                                              **CR- 03-0771 JC**

**EVERETT GEROD JACKSON,**

      **Defendant-Movant,**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

    1.      **THIS MATTER** is before the Court on Defendant-Movant Jackson's ***Motion Undbr [sic] 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*** (*Doc. 1*) (hereinafter, "***Motion***")[2] seeking relief pursuant to 28 U.S.C. § 2255. In response to the ***Motion***, Plaintiff-Respondent filed its ***Government's Response to Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Filed December 12, 2005*** (*Doc. 7*) (hereinafter, "***Response***"). In reply to the ***Response***, Mr. Jackson filed his ***Rebuttal to Government's Response to 2255 Motion*** (*Doc. 8*) (hereinafter, "***Reply***").

---

[1]**Within ten (10) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

[2]Unless otherwise noted, all referenced document numbers are from Case No. CIV-05-1294. The Court notes that Mr. Jackson's ***Motion*** (*Doc. 1*) includes a document titled "The Defendant's Memorandum of Law With Additional Facts and Authority in Support of his Motion for Post Conviction Relief" (hereinafter, "Defendant's Memorandum") which the Court construes as being part of the ***Motion***.

2.      District Judge John E. Conway referred the claims raised in the *Motion* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary.[3] Having considered the parties' submissions, relevant law and the record in this case and Case No. CR-03-0771, the undersigned recommends, for the reasons set forth below, that the claims raised in Mr. Jackson's *Motion* be **DENIED**, without an evidentiary hearing, and that this case be **DISMISSED WITH PREJUDICE**.

### Procedural Background

3.      On March 24, 2003, Mr. Jackson was arrested by an agent of the Drug Enforcement Administration (hereinafter, "DEA") at the Amtrak train station in Albuquerque, New Mexico, after a substance that later tested positive for the presence of cocaine was found by the agent in a baby powder container during a search of Mr. Jackson's luggage.[4]

4.      On March 25, 2003, attorney Thomas B. Jameson was appointed to represent Mr. Jackson.[5]

5.      On April 23, 2003, as a consequence of the search of his luggage, Mr. Jackson was indicted by a federal grand jury in the District of New Mexico on the charge of possession with intent to distribute 500 or more grams of a mixture and substance containing cocaine, its salts, optical and

---

[3]*See **Order of Reference Regarding Prisoner Cases** (Doc. 9).*

[4]*See* "Report of Investigation" dated April 14, 2003, at 1, 3, 5-6, which is attached as the sole exhibit to ***Defendant's Motion to Suppress the Fruits of Unlawful Searches and Supporting Brief*** (*Doc. 24*), filed in Case No. CR-03-0771, Mr. Jackson's underlying criminal case.

[5]*See **Order** (Doc. 5), filed in Case No. CR-03-0771.*

geometric isomers, and salts of isomers, and aiding and abetting an unlawful act, in violation of

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2.[6]

6.      On June 23, 2003, Mr. Jackson filed a motion to suppress asking the Court to

suppress all evidence acquired by the government as a result of the agent's search of his luggage and

its contents on March 24, 2003, and also as a result of law enforcement access to information about

Mr. Jackson obtained from Amtrak records or personnel.[7]   On July 16, 2003, District Judge

John Conway held a hearing on the motion to suppress and entered an order denying the motion.[8]

7.      On August 6, 2003, Mr. Jackson was charged by Information with possession with

intent to distribute less than 500 grams of a mixture and substance containing cocaine, its salts, optical

and geometric isomers, and salts of isomers, and aiding and abetting, in violation of

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2.[9]   On the same date, Mr. Jackson

waived indictment on that charge.[10]

8.      On August 6, 2003, Mr. Jackson entered into a conditional plea agreement

(hereinafter, "*Plea Agreement*") with the government.[11]  In the *Plea Agreement*, Mr. Jackson agreed

to plead guilty to the charge in the Information.[12]

---

[6]*See **Indictment** (Doc. 8)*, filed in Case No. CR-03-0771.

[7]*See **Defendant's Motion to Suppress the Fruits of Unlawful Searches and Supporting Brief** (Doc. 24)*, filed in Case No. CR-03-0771, at 22.

[8]*See **Clerk's Minutes** (Doc. 31)* and ***Order** (Doc. 32)*, filed in Case No. CR-03-0771.

[9]*See **Information** (Doc. 34)*, filed in Case No. CR-03-0771.

[10]*See **Waiver of Indictment** (Doc. 36)*, filed in Case No. CR-03-0771.

[11]*See **Plea Agreement** (Doc. 38)*, filed in Case No. CR-03-0771.

[12]*Id.* at 2.

9.      On August 6, 2003, Mr. Jackson entered a plea of guilty to the charge in the Information.[13]   On the same date, the government filed a motion to dismiss the indictment of Mr. Jackson which Judge Conway granted on August 11, 2003.[14]

10.     On October 22, 2003, Judge Conway sentenced Mr. Jackson to fifty-seven months of imprisonment, three years of supervised release upon release from imprisonment, special conditions of supervision and a special penalty assessment of $100.00.[15]

11.     In the *Plea Agreement*, Mr. Jackson waived his right to appeal his sentence, except to the extent, if any, that the court departed upwards from the applicable sentencing guideline range as determined by the Court; however, he expressly reserved the right to timely appeal any issues raised by his motion to suppress evidence that was denied by Judge Conway.[16]

12.     On October 23, 2003, Mr. Jackson filed a notice of appeal, appealing the denial of his motion to suppress.[17]   On August 18, 2004, the Tenth Circuit Court of Appeals affirmed his conviction and the judgment of the district court.[18]

---

[13]*See Clerk's Minutes* (*Doc. 37*), filed in Case No. CR-03-0771.

[14]*See Motion to Dismiss Indictment* (*Doc. 39*) and *Order Dismissing Complaint* (*Doc. 40*), filed in Case No. CR-03-0771.

[15]*See Judgment in a Criminal Case* (*Doc. 44*), filed in Case No. CR-03-0771.

[16]*See Plea Agreement* (*Doc. 38*), filed in Case No. CR-03-0771, at 6.

[17]*See Notice of Appeal* (*Doc. 45*), filed in Case No. CR-03-0771.

[18]*See* judgment and opinion filed as part of *Document 48* in Case No. CR-03-0771.  The opinion was published in the Federal Reporter as *United States v. Jackson*, 381 F.3d 984 (10th Cir. 2004).

13.     On November 16, 2004, Mr. Jackson filed a petition for a writ of certiorari with the United States Supreme Court.[19]  His petition was denied on April 4, 2005.[20]

14.     On December 12, 2005, Mr. Jackson filed his ***Motion*** under 28 U.S.C. §2255 asserting the claims described below.

## Mr. Jackson's Claims

15.     Mr. Jackson is a federal inmate appearing *pro se*.  Because he is a *pro se* litigant, his ***Motion*** must be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

16.     In his ***Motion***, Mr. Jackson asserts that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution because: (1) his attorney failed to include an argument related to the Fourth Amendment and the Privacy Act of 1974 (hereinafter, the "Privacy Act")[21] in Mr. Jackson's petition for a writ of certiorari filed with the United States Supreme Court; (2) his attorney did not object when Judge Conway allegedly failed to address the merits of Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act, and his attorney did not request specific findings on the merits of that argument; (3) his attorney failed to challenge the validity of Mr. Jackson's arrest; and (4) his attorney failed to challenge the seizure of the baby powder container that was found in Mr. Jackson's luggage.[22]  In addition to the foregoing, Mr. Jackson asserts in his ***Reply*** that he was denied effective assistance of counsel in

---

[19]*See* docket for *Everett Gerod Jackson, Petitioner v. United States*, No. 04-7357, United States Supreme Court, *available at* http://www.supremecourtus.gov/docket/04-7357.htm .

[20]*Id.*

[21]The Privacy Act of 1974, as amended, is codified at 5 U.S.C. § 552a (2004).

[22]*See* ***Motion*** (*Doc. 1*).

violation of the Sixth Amendment because, at the hearing on Mr. Jackson's motion to suppress, his

attorney failed to ask Judge Conway to play a tape recording made by the DEA agent in connection

with the search of Mr. Jackson's luggage which Mr. Jackson contends would have shown that he did

not consent to the search.[23]  Mr. Jackson asks the Court to hold an evidentiary hearing to listen to

the tape recording made by the agent[24] and "to fully explore the issues he has raised."[25]

17.    Mr. Jackson's *Motion* contains a generalized prayer for relief, asking the Court to

"grant him all relief to which he may be entitled in this proceeding."[26]  However, it appears from

allegations in the *Motion*, and the fact that it was filed pursuant to 28 U.S.C. § 2255, that

Mr. Jackson is asking the Court to vacate and set aside the judgment entered in Case No. CR-03-

0771, and order the suppression of all evidence obtained by the government as a result of law

enforcement access to information about Mr. Jackson from Amtrak records or personnel.[27]

18.   In   its   ***Response***,   Plaintiff-Respondent   United   States   of   America

(hereinafter, "United States") asks the Court to deny the *Motion* and argues that: (a) Mr. Jackson

could not be deprived of effective assistance of counsel by his attorney's failure to raise an issue in

Mr. Jackson's petition for a writ of certiorari filed with the Supreme Court because he had no

constitutional right to counsel in that proceeding; (b) the performance of Mr. Jackson's attorney was

not   constitutionally   ineffective   under   the   standard   established   by   the   Supreme   Court   in

---

[23]*See* **Reply** (*Doc. 8*) at 1-2.

[24]*Id.* at 2, 6 and 8.

[25]*Id.* at 6.

[26]**Motion** (*Doc. 1*) at 6.

[27]*See* "Defendant's Memorandum," filed as part of the **Motion** (*Doc. 1*), at 4, 11-12.

*Strickland v. Washington*, 466 U.S. 668 (1984); and (c) Judge Conway did address the merits of

Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act.[28]

## Analysis

19.     In evaluating an ineffective assistance of counsel claim, an attorney's performance, at

either the trial or appellate stage, is measured by the two-prong standard established by the

Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).[29]  To prevail on an ineffective

assistance claim under the *Strickland* standard, Mr. Jackson must show that: (1) his attorney's

performance fell below an objective standard of reasonableness; and (2) he was prejudiced by the

attorney's deficient performance.  *Id.* at 687-88.  Both showings must be made to satisfy the

*Strickland* standard.  *Id.* at 687.  To demonstrate unreasonable performance, Mr. Jackson must show

that his attorney made "errors so serious" that his performance could not be considered "reasonable[ ]

under prevailing professional norms."  *Id.* at 687-88.  Moreover, a showing of unreasonable

performance requires that Mr. Jackson overcome the strong presumption that his attorney's conduct

was within the wide range of reasonable professional assistance.  *Id.* at 689.  To demonstrate

prejudice, Mr. Jackson must show a reasonable probability, sufficient to undermine confidence in the

outcome, that the result of the proceeding would have been different.  *Id.* at 694.  The Court does

not have to address both prongs of the *Strickland* standard if the defendant makes an insufficient

showing on one of the prongs.  *Id.* at 697.

---

[28]*See* **Response** (*Doc. 7*).

[29]Although *Strickland* established standards for determining effective assistance of counsel at the trial level,
the same standards are applied in determining effective assistance of appellate counsel.  *See United States v. Cook*,
45 F.3d 388, 392 (10th Cir. 1995).

### *Ineffective Assistance of Counsel Related to Attorney's*
### *Failure to Include Argument in Mr. Jackson's Petition for a Writ of Certiorari*

20.      For his first claim, Mr. Jackson contends that his attorney's performance was constitutionally ineffective because he failed to include an argument in Mr. Jackson's petition for a writ of certiorari filed with the Supreme Court.  The allegedly meritorious argument omitted from the petition was that all evidence obtained by the government as a result of law enforcement access to personal information about Mr. Jackson from Amtrak should have been suppressed because the information was obtained illegally under the Fourth Amendment and provisions of the Privacy Act. In a nutshell, this was an argument that the DEA obtained from Amtrak personal information about Mr. Jackson in which he had a reasonable expectation of privacy by virtue of the nature of the information and the Privacy Act, and this information caused the DEA agent to target Mr. Jackson and confront him on the train.[30]  Mr. Jackson argued that the DEA obtained this information in violation of restrictions in the Privacy Act[31] which, he argued, were applicable to Amtrak because it was a "government controlled corporation" and, therefore, an "agency," subject to the provisions of the Act.[32]  Mr. Jackson argued that the DEA violated his rights under the Fourth Amendment by

---

[30]The information in question concerned Mr. Jackson's travel arrangements and the fact that he paid for his Amtrak ticket with cash. *See Defendant's Motion to Suppress the Fruits of Unlawful Searches and Supporting Brief* (*Doc. 24*) at 2-3, filed in Case No. CR-03-0771.

[31]Under the Privacy Act, an "agency" may disclose records of individuals for a criminal law enforcement activity only if: (1) the activity is authorized by law; and (2) the head of the pertinent law enforcement agency makes a written request to the agency explaining which record is desired and the law enforcement activity for which the record is sought. *See* 5 U.S.C. § 552a(b)(7).

[32]The Privacy Act, at 5 U.S.C. § 552a(a)(1), defines "agency" by reference to the Freedom of Information Act (hereinafter, "FOIA"), 5 U.S.C. § 552 (Section 552a(a)(1) of the Privacy Act references the FOIA definition of agency found at 5 U.S.C. § 552(e), which was subsequently re-designated as § 552(f)).  *See Schmitt v. City of Detroit,* 395 F.3d 327, 329 (6th Cir. 2005).  Under FOIA, the term "agency" includes "any executive department, . . . *Government controlled corporation*, or other establishment in the executive branch of the Government . . . ." 5 U.S.C. § 552(f) (emphasis added).

acquiring his personal information from Amtrak in violation of the Privacy Act and without any

reasonable suspicion and, therefore, this information and all the evidence derived from it, including

the cocaine found in the baby powder container in his luggage, should be suppressed. Mr. Jackson's

attorney made this argument at the trial level in Mr. Jackson's motion to suppress[33] and also in his

direct appeal to the Tenth Circuit;[34] however, the attorney did not make this argument in

Mr. Jackson's petition for a writ of certiorari to the Supreme Court. Judge Conway rejected this

argument in ruling on the motion to suppress,[35] and the Tenth Circuit rejected this argument in ruling

on Mr. Jackson's direct appeal.[36]

21.    The Court recommends that this claim be denied for two reasons. First, this claim

presupposes that Mr. Jackson had a constitutional right to counsel in connection with his petition for

a writ of certiorari to the Supreme Court, but he did not. The review of a petition for a writ of

certiorari by the Supreme Court is discretionary,[37] and the Supreme Court has held that a criminal

defendant does not have a constitutional right to counsel to pursue discretionary applications for

review in the Supreme Court.[38]    Because Mr. Jackson had no constitutional right to counsel in

connection with his petition for a writ of certiorari to the Supreme Court, he could not be deprived

---

[33]*See Defendant's Motion to Suppress the Fruits of Unlawful Searches and Supporting Brief* (*Doc. 24*) at 16-22, filed in Case No. CR-03-0771.

[34]*See United States v. Jackson*, 381 F.3d 984, 989-90 (10th Cir. 2004) (holding that the Privacy Act does not apply to Amtrak because Amtrak is not an "agency" within the meaning of the Privacy Act).

[35]*See Order* (*Doc. 32*), filed in Case No. CR-03-0771.

[36]*See United States v. Jackson*, 381 F.3d at 989-90.

[37]*See Ross v. Moffitt*, 417 U.S. 600, 616-17, 619 (1974); *see also* S. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons.").

[38]*See Wainwright v. Torna*, 455 U.S. 586, 587 (1982), citing *Ross v. Moffitt*, 417 U.S. 600 (1974).

of the constitutional right to effective assistance of counsel by his attorney's omission of an argument

from Mr. Jackson's certiorari petition.[39]

22.    Second, even if the Court were to assume that Mr. Jackson had a constitutional right

to counsel in connection with his petition for a writ of certiorari and apply the *Strickland* standard

to his claim, he would not be able to prevail.  When the performance of appellate counsel is

challenged as constitutionally ineffective, the Court reviews with great deference an attorney's

decision to omit an issue on appeal.[40]  The Sixth Amendment does not require that an attorney raise

every non-frivolous issue on appeal and appellate counsel may eliminate weaker arguments on appeal

to focus on stronger arguments that are more likely to prevail.[41]  On the other hand, an attorney may

render constitutionally ineffective assistance of counsel by omitting an issue on appeal that is a "dead-

bang winner."[42]  The Tenth Circuit has defined "dead-bang winner" as "an issue which was obvious

from the trial record, . . . *and* one which would have resulted in a reversal on appeal."[43]

23.    It is apparent from the record that the performance of Mr. Jackson's attorney, in

failing to raise the Privacy Act issue in Mr. Jackson's certiorari petition to the Supreme Court, did

not fall below an objective standard of reasonableness.  As demonstrated by the attorney's affidavit,

---

[39]*Cf. Wainright v. Torna*, 455 U.S. at 587-88 (since habeas petitioner had no constitutional right to counsel to pursue discretionary review, he could not be deprived of effective assistance of counsel when his retained attorney failed to file a timely application for discretionary review); *United States v. Thomas*, Nos. 01-1063, 01-M-178 and 98-CR-65-M, 2002 WL 532419 at **2 (10th Cir. Apr. 10, 2002) (unpublished) ("Because petitioner had no constitutional right to counsel, he was not deprived of effective assistance of counsel when his attorney did not file a petition for a writ of certiorari.")

[40]*See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999), citing *United States v. Cook*, 45 F.3d 388, 394 (10th Cir. 1995).

[41]*See United States v. Cook*, 45 F.3d at 394-95.

[42]*Id.* at 395.

[43]*Id.*

he did not include the Privacy Act issue in the petition for several reasons.  First, the attorney found

little support for the issue in his research.[44]  Second, the attorney correctly found that there did not

appear to be a genuine conflict among the federal circuit courts involving the issue.[45]  Third, the

attorney believed that the Privacy Act argument was "problematic" given that Mr. Jackson ultimately

consented to the search which led to the discovery of the cocaine.[46]  Fourth, the attorney, who raised

only one issue in the certiorari petition based on the Fourth Amendment, determined not to include

the Privacy Act argument based on his professional experience that petitions for a writ of certiorari

raising multiple issues were not as likely to be granted as petitions raising a single issue that had been

the subject of conflicting decisions in the federal circuit courts.[47]  These are all sound reasons for not

including the Privacy Act argument in Mr. Jackson's certiorari petition and are not indicative of

attorney performance that falls below an objective standard of reasonableness.[48]

24.     Nor can Mr. Jackson demonstrate prejudice from his attorney's omission of the

Privacy Act argument from his petition for a writ of certiorari.  To establish prejudice, Mr. Jackson

would have to show that the Supreme Court would have granted his petition for a writ of certiorari

if his attorney had included the Privacy Act argument in the petition.  The Court finds this to be highly

unlikely given that review on a writ of certiorari is discretionary and the absence, at the time

---

[44]*See* Affidavit of Thomas B. Jameson, attached as an exhibit to the **Response** (*Doc. 7*), at ¶ 11.

[45]*Id.*  The existence of a conflict among the federal circuit courts is a factor which the Supreme Court considers in deciding whether to grant a petition for a writ of certiorari.  *See* S. Ct. R. 10(a).

[46]*See* Affidavit of Thomas B. Jameson, attached as an exhibit to the **Response** (*Doc. 7*), at ¶11.

[47]*Id.*

[48]The Supreme Court noted the need to narrow the issues on appeal in *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) when it stated that: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."

Mr. Jackson's certiorari petition was filed, of any conflicting decisions in the federal circuit courts regarding the issue of whether Amtrak is an agency subject to the provisions of the Privacy Act.[49] Additionally, Mr. Jackson has made no showing that his Privacy Act argument was a "dead-bang winner" that would have caused the Supreme Court to reverse the Tenth Circuit's decision in his direct appeal that Amtrak is not a agency subject to the provisions of the Privacy Act. Accordingly, the Court concludes that Mr. Jackson has not shown that his counsel rendered ineffective assistance under either prong of the *Strickland* standard.

### *Ineffective Assistance of Counsel Related to Attorney's Failure to Object and Failure to Request Specific Findings*

25.     For his second claim, Mr. Jackson contends he received ineffective assistance of counsel because his attorney did not object when Judge Conway allegedly failed to address the merits of Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act and also because his attorney did not request specific findings on the merits of that argument.

26.     This claim has no merit. Judge Conway did address the merits of Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act. During the hearing on Mr. Jackson's motion to suppress, Judge Conway made specific mention of the argument, which was fully briefed in the motion, in the following exchange with William Pflugrath, the attorney for the government:

---

[49]When the attorney filed Mr. Jackson's certiorari petition in the Supreme Court, it appears that there were only two reported federal circuit court decisions deciding the issue of whether Amtrak is an agency subject to the provisions of the Privacy Act. Both decisions supported the government's position in Mr. Jackson's case that Amtrak is not an agency subject to the provisions of the Privacy Act. These decisions were *United States v. Jackson*, 381 F.3d 984, 990 (10th Cir. 2004), the Tenth Circuit decision in Mr. Jackson's direct appeal, and *Ehm v. National Railroad Passenger Corp.*, 732 F.2d 1250, 1252-55 (5th Cir. 1984). Both cases held that Amtrak is not an agency within the meaning of the Privacy Act and, therefore, is not subject to the Privacy Act.

> MR. PFLUGRATH:  Does the Court wish to entertain any arguments on the issue of the Privacy Act and Amtrak?  Or do you want to hold that in abeyance?
>
> THE COURT:  I've never heard that argument before, and quite frankly, it's up to the court to tell me that there's a right to privacy.
>
> MR. PFLUGRATH:  I concur, Your Honor.
>
> THE COURT:  So it's not going to come from me.  It's a very interesting argument, but I'm not going to go along with it.  I do want to see this can of baby powder.  Have you got that with you?[50]

Judge Conway also mentioned the Privacy Act argument in the following exchange with

Mr. Jackson's attorney during the hearing:

> THE COURT:  And I liked your argument about the Privacy Act, which I don't think is applicable, but it's certainly a new idea.  I never heard it before.  Where did you get that idea anyway?
>
> MR. JAMESON:  I'm not sure.  I had some help, Your Honor.  I had some minds more educated and sharper than my own in my office, who came up with the idea.
>
> . . .
>
> THE COURT:  I frankly kind of liked it.  I thought it was very entertaining.  But it's not going to go anyplace, at least not with me.  But you're welcome to take it up to the circuit if you want to.[51]

Additionally, at the end of the hearing, Judge Conway stated: "But your motion will be denied, and

your motion to suppress will be denied in its entirety, and your Privacy Act will be denied.

Everything in your motion will be denied, period."[52]

---

[50]*Transcript of Hearing on Motion to Suppress* (July 16, 2003) at 3-4 (in Case No. CR-03-0771).

[51]*Id.* at 47-48.

[52]*Id.* at 48.

27.     Judge Conway also included a specific reference to the Privacy Act argument in his order denying the motion to suppress when he stated: "I also find the Privacy Act argument unpersuasive."[53]   Thus, Judge Conway addressed the merits of the argument by denying the motion to suppress and he expressly rejected the argument in his order ruling on the motion to suppress. Accordingly, there is no factual basis in the record for Mr. Jackson's argument that his attorney was ineffective for failing to object because Judge Conway did address the merits of Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act.

28.     Mr. Jackson also contends that his attorney was ineffective because he failed to ask Judge Conway to make specific findings on the merits of his argument related to the Fourth Amendment and the Privacy Act.  This argument has no merit because Mr. Jackson has made no showing that he was prejudiced by his attorney's failure to make this request.  As noted above, Judge Conway denied Mr. Jackson's motion to suppress and stated in his order denying the motion that he found Mr. Jackson's Privacy Act argument "unpersuasive."[54]   This determination by Judge Conway was sufficiently specific that the Tenth Circuit Court of Appeals was able to consider Mr. Jackson's argument related to the Fourth Amendment and the Privacy Act on appeal and decide the issue on its merits.[55]   Mr. Jackson has made no showing that he was prejudiced by his attorney's failure to request more specific findings or that a request for such findings, if made, would have altered in any way the outcome of his case.

---

[53]*Order* (*Doc. 32*), filed in Case No. CR-03-771.

[54]*Id.*

[55]*See United States v. Jackson*, 381 F.3d at 990.

### *Ineffective Assistance of Counsel Related to Attorney's*
### *Failure to Challenge Validity of Arrest*

29.    For his third claim, Mr. Jackson argues, in conclusory fashion, that his attorney

provided ineffective assistance of counsel by failing to challenge the validity of his arrest.[56] However,

Mr. Jackson offers no specifics as to how the validity of his arrest could have been challenged by his

attorney or what evidence could have been offered in support of this claim.    Even though

Mr. Jackson's claims are construed liberally because he appears *pro se*, he is not relieved of the

burden of alleging sufficient facts on which a recognized legal claim can be based.[57]  Because this

claim of ineffective assistance is nonspecific and conclusory, it should be dismissed.

### *Ineffective Assistance of Counsel Related to Attorney's*
### *Failure to Challenge Seizure of Baby Powder Container*

30.    For his fourth claim, Mr. Jackson contends that his attorney provided ineffective

assistance of counsel by failing to challenge the seizure of the baby powder container that was found

in Mr. Jackson's luggage.[58]  This argument is merely a conclusory allegation, unsupported by specific

facts.  Therefore, it should be dismissed for the same reasons as the claim described in paragraph 29,

above.

### *Ineffective Assistance of Counsel Related to Attorney's Failure*
### *to Ask District Judge to Play Tape at Hearing on Motion to Suppress*

31.    In his ***Reply***, Mr. Jackson argues that he was denied effective assistance of counsel

because his attorney failed to ask Judge Conway, at the hearing on Mr. Jackson's motion to suppress,

to play a tape recording that the DEA agent made in connection with his search of Mr. Jackson's

---

[56]*See* "Defendant's Memorandum," filed as part of the ***Motion*** (*Doc. 1*), at 14, and ***Reply*** (*Doc. 8*) at 6.

[57]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[58]*See* "Defendant's Memorandum," filed as part of the ***Motion*** (*Doc. 1*), at 14, and ***Reply*** (*Doc. 8*) at 6.

luggage.[59]  Mr. Jackson seems to argue that this tape recording would show that he did not consent

to the search.  It is not entirely clear from Mr. Jackson's argument whether he contends that the tape

recording would show that he did not consent to the search of his luggage, or that it would show that

he did not consent to a search of the baby powder container which contained cocaine that the agent

found in a shaving kit inside Mr. Jackson's luggage.[60]  However, Mr. Jackson's argument, and his

reference to page twenty of the transcript of the hearing on the motion to suppress which contains

testimony of the DEA agent who searched Mr. Jackson's luggage, imply that he is arguing that the

tape recording would show that he did not tell the agent that he could search the baby powder

container because Mr. Jackson did not hear the agent ask him for consent.[61]

32.      The Court finds no merit to this argument by Mr. Jackson.  Even if the Court were

to assume, as Mr. Jackson seems to argue, that the tape recording made by the DEA agent would

have shown that Mr. Jackson did not expressly tell the agent that he could search the baby powder

container found in Mr. Jackson's luggage, this would be consistent with the agent's testimony at the

hearing.[62]  Moreover, Mr. Jackson's attorney did argue, in both the motion to suppress and on appeal,

---

[59]*See Reply* (*Doc. 8*) at 1-2.  This tape recording is referred to in the transcript of the hearing on the motion to suppress but is not part of the record.  *See Transcript of Hearing on Motion to Suppress* (July 16, 2003) at 3 (in Case No. CR-03-0771).

[60]*See Reply* (*Doc. 8*) at 1-2.

[61]The Court reaches this conclusion because Mr. Jackson seems to argue that he did not hear the DEA agent ask him for consent to search the baby powder container due to a high level of background noise and, therefore, he did not consent to a search of the container.  *See Reply* (*Doc. 8*) at 1-2.  At the hearing on the motion to suppress, the DEA agent testified that he asked Mr. Jackson "two, maybe three times" if the baby powder container belonged to him but Mr. Jackson did not respond.  *Transcript of Hearing on Motion to Suppress* (July 16, 2003) at 20 (in Case No. CR-03-0771).  The agent testified that "the noise level was pretty loud," but the agent also said "I was very close to him, and he could hear me.  He actually glanced over at me and looked at me when I asked him, but he didn't respond.  He just turned away from me and looked straight ahead again." *Id.* at 20-21.  The agent then testified that he "popped the top" off the baby powder container with a Leatherman tool and, using the tool, checked its contents.  *Id.* at 21-26.

[62]*Id.* at 20-24.

that the scope of Mr. Jackson's consent to search his luggage did not extend to a search of the baby

powder container and, therefore, the search of the baby powder container by the DEA agent violated

his rights under the Fourth Amendment.[63]   However, both Judge Conway and the Tenth Circuit

rejected this argument.[64]   Because the tape recording made by the agent would not have changed the

facts before the trial court regarding Mr. Jackson's consent to search the baby powder container, and

because Mr. Jackson's attorney argued at both the trial and appellate court levels that the scope of

Mr. Jackson's consent to search his luggage did not extend to a search of the baby powder container,

the Court fails to see how the attorney's performance was deficient in failing to ask Judge Conway

to play the tape recording at the hearing on the motion to suppress or how such failure prejudiced

Mr. Jackson in the defense of his case.   Accordingly, this claim should be denied.

### *Evidentiary Hearing*

33.      Under 28 U.S.C. § 2255, the Court must conduct an evidentiary hearing "[u]nless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief[.]"   Because the parties' submissions and the files and records in this case conclusively show

that Mr. Jackson entitled to no relief, an evidentiary hearing is not required.

---

[63]*See **Defendant's Motion to Suppress the Fruits of Unlawful Searches and Supporting Brief** (Doc. 24)*, filed in Case No. CR-03-0771, at 5-11, and *United States v. Jackson*, 381 F.3d at 988-89.

[64]*See **Order** (Doc. 32)*, filed in Case No. CR-03-771, and *United States v. Jackson*, 381 F.3d at 988-89.   In its decision on the direct appeal, the Tenth Circuit noted that the DEA agent "asked Jackson two or three times if he owned the baby powder container, but Jackson did not respond." *Id.* at 988.   The Tenth Circuit noted that "Jackson was standing near Perry [the DEA agent] throughout the search but yet remained silent and did not object to the search of the baby powder container." *Id.*   The Tenth Circuit concluded that: "Under the circumstances, the search of the baby powder container was within the scope of Jackson's consent." *Id.*

## Conclusion

34.     After carefully reviewing the record, including the transcript of the July 16, 2003,

hearing on Mr. Jackson's motion to suppress, and the parties' submissions, the undersigned finds that

Mr. Jackson has failed to show that his attorney's performance fell below an objective standard of

reasonableness or that he was prejudiced by his attorney's alleged deficiencies.  Mr. Jackson's

allegations are either conclusory or without legal merit.  Consequently, the undersigned recommends

that the *Motion* be denied, without an evidentiary hearing, and that this case be dismissed with

prejudice.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that Mr. Jackson's *Motion Undbr*

*[sic] 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*

(*Doc. 1*) be **DENIED**, without an evidentiary hearing, and that this case be **DISMISSED WITH**

**PREJUDICE**.

_Lourdes A. Martínez_

**Lourdes A. Martínez**
**United States Magistrate Judge**